UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TODD ALAN RAMEY,<br><br>Defendant. | CASE NO. CR13-0368JLR<br><br>ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

## I. INTRODUCTION

Before the court is Defendant Todd Alan Ramey's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). (Mot. (Dkt. # 45).) Plaintiff United States of America ("the Government") opposes Mr. Ramey's motion. (Resp. (Dkt. # 52).) Mr. Ramey is presently incarcerated at Federal Medical Center Fort Worth ("FMC Fort Worth"). The court has considered Mr. Ramey's motion, the Government's response, the parties' submissions filed in support of and in opposition to Mr. Ramey's motion, the

//

relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES Mr. Ramey's motion.

## II. BACKGROUND

The investigation and prosecution of Mr. Ramey began in June 2012 when the Homeland Security Investigations Cyber Crimes Center Child Exploitation Investigations Unit investigated a website "known to be used by persons interested in exchanging child pornography to meet and become trading partners." (PSR (Dkt. # 26) (sealed) ¶ 7.) In July 2013, agents discovered that Mr. Ramey was the user "young4play" and that he attempted to trade child pornography. (*Id.* ¶ 8.) The "young4play" account was linked to Mr. Ramey's email accounts, loveyoungones@hotmail.com and loveyoungones5to15@gmail.com. (*Id.*) "Between January 2013 and November 2013, [Mr. Ramey] sent and received images and video files of minors engaged in sexually explicit conduct via these email accounts." (*Id.*) One of those images showed an adult male engaged in sexual intercourse with a child victim between three and five years old. (*Id.* ¶ 9.) Agents also discovered a handwritten story describing the violent rape of nine-year-old girl with the same name as Mr. Ramey's female minor relative. (Sentencing Memorandum (Dkt. # 32) (sealed) at 3-4.)

//

//

//

[1] Neither party requests oral argument, and the court finds oral argument unhelpful to its disposition of Mr. Ramey's motion. *See* Local Rules W.D. Wash. CrR 12(b)(12) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

In addition to possessing, advertising, and trading images and videos depicting child rape, Mr. Ramey engaged in conversations with other distributors of child pornography, in which he boasted of raping children and detailed how to groom children so that they would not report sexual abuse. (*Id.*) In some of these conversations, Mr. Ramey described in detail grooming and raping a child he described as a 9-year-old female relative and stating that he had attached: "a picture of my [. . .] she is 9yo but looks like she is about 6 or 7 yo. I just started training her last month to be my little sex toy." (*Id.*)

On November 15, 2013, agents seized a number of digital devices from Mr. Ramey's residence that contained "over 14,000 images and 1,700 videos of minors engaging in sexually explicit conduct, to include some images that portray sadistic or masochistic conduct." (PSR ¶ 10.) In just one of many horrific examples, one image depicted "an adult male's erect penis being pushed into the [three-to-six-month-old] child victim's anus." (*Id.*)

In June 1999, when Mr. Ramey was 28, Mr. Ramey had sexual intercourse with a 14-year-old girl who became pregnant. (*Id.* ¶ 11.) They later married. (*Id.*) On or about the year 2000, the Anacortes Policy Department investigated Mr. Ramey for child rape relating to his then-future-wife, but according to police reports, did not prosecute Mr. Ramey because she would not cooperate with the investigation. (*Id.* ¶ 34.) Mr. Ramey has no other criminal convictions. (*Id.* ¶¶ 30-31.)

Mr. Ramey was charged with Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a), (b)(1), Receipt of Child Pornography in violation of 18 U.S.C.

§ 2252(a)(2), (b)(1), and Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). (Compl. (Dkt. # 1) at 1-2.) Mr. Ramey entered into a plea agreement under which he pleaded guilty to Distribution of Child Pornography (Plea Agreement (Dkt. # 23) ¶ 1), agreed to undergo a pre-sentence psycho-sexual assessment (*id.* ¶ 10(a)), agreed to undergo polygraph testing (*id.* ¶ 10(c)), and agreed to register as a sex offender (*id.* ¶ 14). The court accepted Mr. Ramey's plea (*see* Acceptance of Plea (Dkt. # 25)) and sentenced Mr. Ramey to 108 months in prison (*see* Judgment (Dkt. # 35) at 2) and 15 years of supervised release on the condition—among others—that Mr. Ramey register as a sex offender (*see id.* at 3).

Mr. Ramey underwent his psycho-sexual evaluation and polygraph examination. (*See* Reply (Dkt. # 59), Ex. 4 (Dkt. # 60) (sealed).) The ensuing report concluded that he was "in the lowest range of recidivism," had a "low risk to sexually reoffend," and noted that Mr. Ramey "has the capacity to live within an intimate relationship for a sustained period of time; he does not have multiple sentencing dates; he does not have a history of sexual or other violence; and he does not have a history of other sex offenses." (*Id.* at 9, 12.) It further notes that Mr. Ramey is "amenable to community-based sex offender specific treatment." (*Id.* at 13.) In particular, the report recommended "three years of community based, weekly sex offender treatment, with monthly individual sessions, facilitated by a Certified Sex Offender Treatment Provider." (*Id.*)

The Government contends that "[t]he story that Mr. Ramey presented to the examiner makes clear that Ramey was in almost complete denial about the extent of his conduct, and deceived the examiner repeatedly." (Resp. at 13.) For example, the

Government contends that Mr. Ramey's statement to the evaluator that he only penned one child rape story and that it was copied from someone else is plainly a lie, because the story referenced the real names of Mr. Ramey's relatives. (*Id.*)

FMC Forth Worth experienced a large coronavirus outbreak, although it has largely subsided. According to the Bureau of Prisons' website, as of July 23, 2020, 584 inmates out of a total 1,332 inmates housed at FMC Forth Worth had recovered from the 2019 coronavirus disease ("COVID-19"), 14 remain positive, and 12 have died from the disease. *See https://www.bop.gov/coronavirus/* (last visited July 23, 2020).[2] Mr. Ramey suffers from depression, hypothyroidism, cardiomyopathy, hypertension, heart disease, and hyperlipidemia. (CRI (Dkt. # 49) (sealed) at 1.) Mr. Ramey also has an implanted cardiac defibrillator. (*Id.*) Mr. Ramey tested positive for COVID-19 on April 29, 2020, and fully recovered by May 18, 2020. (*Id.*) He was asymptomatic throughout and has been released from isolation. (Resp., Ex. A (Dkt. # 54) (sealed) at 2.)

Mr. Ramey appears to have a single release plan, which involves an initial stay in a residential reentry center. (Resp. at 13.) Mr. Ramey no longer has a viable option for a residential address to return to, and given the lack of a residential address, Probation likely cannot employ effective location monitoring. (*Id*; CRI at 2.)

---

[2] The court takes judicial notice of BOP's COVID-19 data for FMC Forth Worth. *See U.S., ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 8, 2008) ("Information on government agency websites has often been treated as properly subject to judicial notice").

## III. ANALYSIS

### A. Standard for Compassionate Release

A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35. *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United States*, 506 U.S. 817, 824-25 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)). One such statute is 18 U.S.C. § 3582(c)(1), which governs motions for compassionate release. *See United States v. Fuller*, No. CR17-0324JLR, 2020 WL 1847751, at * 2 (W.D. Wash. Apr. 13, 2020).

Until recently, only BOP could bring a motion for the compassionate release of a prisoner, but the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1) so that federal prisoners may now seek such release directly from the court. The statute now provides the court with authority to reduce a sentence upon the motion of an inmate if three conditions are met: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days have lapsed after the applicable warden has received such a request;[3] (2) the

[3] Mr. Ramey submits a handwritten letter from himself to Eric Wilson, the Warden at FMC Fort Worth, seeking compassionate release. (*See* Mot., Ex. 1.) The letter bears what appears to be Mr. Ramey's signature and is dated April 12, 2020. (*See id*.) The Government accepts that "[i]f such a request was made on that date, thirty days have passed since a request was presented to the Warden so this statutory prerequisite has been met," and does not refute that Mr. Ramey actually sent the letter. (Resp. at 9.)

inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the United States Sentencing Commission's policy statement. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020).

**B. The United States Sentencing Commission's Policy Statement**

As noted above, before granting compassionate release, the court must find that the defendant's release is consistent with the United States Sentencing Commission's policy statement. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley*, 2020 WL 1819838, at *5. The Sentencing Commission's policy statement is found in the United States Sentencing Guidelines ("USSG") § 1B1.13.[4] The policy statement provides in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

[4] The Sentencing Commission is statutorily required to create the referenced policy statement. *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

USSG § 1B1.13.

Mr. Ramey fails to demonstrate that he "is not a danger to the safety of any other person or to the community" under subsection (2) of USSG § 1B1.13. *See United States v. Gotti*, 433 F Supp. 3d 613, 619-20(S.D.N.Y. 2020) (concluding that even if a federal prisoner had met his burden of showing eligibility for compassionate release due to his compromised medical condition, the court is not required to release him if he continues to be a danger to the community).

In making a determination concerning whether the prisoner continues to be a danger to the safety of any other person or to the community, subsection (2) of USSG § 1B1.13 points the court to the factors listed in 18 U.S.C. § 3142(g). *See* USSG § 1B1.13. Under section 3142(g), relevant factors that the court should consider here include: the nature and circumstances of the crime charged, including whether the offense involves a minor victim, the defendant's history and characteristics, including his character, his physical and mental condition, his family and community ties, his past conduct, and his criminal history. *See* 18 U.S.C. § 3142(g).

The court cannot agree that Mr. Ramey represents no danger to the community if released. At the time of his arrest, Mr. Ramey was in possession of "over 14,000 images and 1,700 videos of minors engaging in sexually explicit conduct, to include some images that portray sadistic or masochistic conduct" that he had spent years collecting. (PSR ¶ 10.) Mr. Ramey distributed those files to others along with personalized accounts of grooming and raping child victims that encouraged and enabled other sexual predators to further harm innocent children. (PSR ¶ 10; Sentencing Memorandum at 3-4.)

Although there is no evidence that Mr. Ramey acted upon his fantasies prior to his arrest, some of the stories he distributed bragged repeatedly about sexually abusing a specific minor relative. (*See* Sentencing Memorandum at 3-4.) The court cannot conclude that Mr. Ramey's release would not pose a danger to this minor family member. *See, e.g.*, *United States v. Miezin*, No. 1:13CR15, 2020 WL 1985042, at *4 (N.D. Ohio Apr. 27, 2020) (denying motion for compassionate release, despite hypertension and border-line diabetes that placed the prisoner at greater risk of a COVID 19 infection, due to the prisoner's continued danger to the community based in part on the nature of his prior offense which included sharing pornography and bragging about sexual conduct with an underaged boy even though the contact never actually occurred).

The victim impact statements in this case reveal the severe and long-lasting damage the sharing of these kinds of images and videos has on child victims. (*See* VIS (Dkt. # 27 (sealed).) The court is hopeful that Mr. Ramey will build off the positive prognosis made during his psychosexual evaluation so that Mr. Ramey may avoid re-offending and causing additional harm upon release. However, the nature of Mr. Ramey's crime, and the fact that it included minor victims, leads the court to conclude that he remains a danger to the community.

Further, Mr. Ramey's requested relief—admission to a residential reentry facility—would not necessarily lessen his danger to the community. Mr. Ramey's crime does not require anything more than access to the internet. Mr. Ramey fails to explain how any of his proposed release placements would prevent him from accessing the internet. In today's society, smartphones, tablets, laptops, smart TVs, and countless other

devices are ubiquitous. Therefore, it would be extremely difficult to place Mr. Ramey in a setting that would eliminate his ability to engage in his prior criminal conduct.

Based on the foregoing analysis, the court finds that Mr. Ramey would be a danger to the community if released. Accordingly, he cannot satisfy the requirements for compassionate release, and the court DENIES his motion.

## IV.   CONCLUSION

For the reasons set forth above, the court DENIES Ms. Ramey's motion for compassionate release (Dkt. # 45).

Dated this 23rd day of July, 2020.

JAMES L. ROBART
United States District Judge